UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **Nolberto Barrera** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Case No. 1:20-cv-02395 |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HOMELAND SECURITY;** ) | |
| **CHAD WOLF, Acting Secretary of the** ) | |
| **Department of Homeland Security,** ) | |
| **UNITED STATES CITIZENSHIP AND** ) | |
| **IMMIGRATION SERVICES;** ) | |
| **MARK KOUMANS, Acting Director of** ) | |
| **United States Citizenship and Immigration** ) | |
| **Services** ) | |
| | |
| **Defendants.** | |

## COMPLAINT

NOW COMES Plaintiff Nolberto Barrera and complains of the Defendants as follows

## INTRODUCTION

1. Plaintiff Nolberto Barrera ("Plaintiff" or "Mr. Barrera") brings this action to challenge the denial of his I-485 Application to Register Permanent Residence or Adjust Status ("I-485 Application") dated December 10, 2019. Defendant United States Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS") and the Defendants acting on behalf of DHS and USCIS denied Mr. Barrera's I-485 Application based on an unlawful new interpretation of what constitutes a departure from the United States.

2. Defendants erroneously conclude that Mr. Barrera's departure from the United States on advance parole does not constitute a "departure" from the United States and does not

execute a removal order pursuant to the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA").

3. Based on this misguided approach under MTINA, USCIS wrongly concludes that because Mr. Barrera has not "departed" the United States, his removal order stills stands and, consequently, Mr. Barrera's application remains within the jurisdiction of the immigration judge, not USCIS under 8 CFR§ 245.1(c)(8)(ii)(A).

4. In denying Mr. Barrera's I-485 Application, Defendants violate 8 CFR § 241.7, which states that "any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed, except that an alien who departed before the expiration of the voluntary departure period granted in connection with an alternate order of deportation or removal shall not be considered to be so deported or removed."

5. In denying Mr. Barrera's I-485 Application, Defendants violate long-standing precedent that leaving the United States under a grant of advance parole is, in fact, a "departure." *See Matter of Arrabally and Yerrabelly*, 25 I. & N. 771 (BIA 2012).

6. Mr. Barrera seeks a declaration that Defendants' decision violated the Administrative Procedure Act and Immigration and Nationality Act because it was arbitrary and capricious. He also seeks mandamus relief, requiring Defendants to reopen and adjudicate his I-485 Application, because Plaintiff has a statutory right to be treated as having departed the U.S., executing his removal order, by virtue of his TPS and advance parole grant.

7. Plaintiff seeks to adjust status to that of lawful permanent resident so that he may continue to make the United States his home with his family, despite potential

      termination of TPS. He has an approved visa petition filed by his U.S. citizen daughter and thus independently qualifies to apply to adjust his status to lawful permanent resident. But for Defendants' violation of 8 CFR § 241.7, *Matter of Arrabally and Yerrabelly,* and their own long-standing practice, he would be eligible to do so.

8. Defendants new interpretation of departures affects thousands of similarly situated applicants for adjustment who have departed the U.S. on advance parole.

## **DEFENDANTS**

9. Defendant United States Citizenship and Immigration Services is a bureau within the Department of Homeland Security and is responsible for the administration and enforcement of the Immigration and Nationality Act ("INA") and all other laws relating to the immigration and naturalization of noncitizens. USCIS is an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudication immigration benefits applications, including applications for TPS and adjustment of status.

10. Defendant DHS is an executive agency of the United States, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). Since, March 1, 2003, DHS has been the agency responsible for implementing the INA, including provisions relating to TPS and adjustment of status.

11. Defendant Chad Wolf is the Acting Secretary of DHS. The Homeland Security Act of 2002, Pub. L. 107-296, created DHS to perform the duties of the Immigration and Naturalization Service. Secretary Wolf's responsibilities are set forth in 8 U.S.C. §§ 1103(a)(1)-(3), among which are: to administer and enforce the Immigration Act and all other laws relating to the immigration and naturalization of aliens; to control, direct and

supervise all employees; to establish such regulations, issue such instructions, and perform such other acts deemed necessary for carrying out his authority; and to require any employee of the Service or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder upon any other employee of the Service. Mr. Wolf is sued in his official capacity.

12. Defendant Mark Koumans is the Director of USCIS, a position created by Section 451 of the Homeland Security Act. Pursuant to Section 451 of the Homeland Security Act, Defendant Cuccinelli administers the provisions of the Immigration Act through his agents and officials of the USCIS, which functions were previously performed by the Commissioner and District Directors of the Immigration and Naturalization Service. He oversees operations of personnel of USCIS, who adjudicate visa petitions filed by or on behalf of aliens, applications for permanent residency status, and appeals denying such petitions. Mr. Koumans is sued in his official capacity.

13. Mr. Koumans' predecessor, Kenneth T. Cuccinelli, issued the denial of Plaintiff's I-485 Application as well as a subsequent public notice of policy change in December 2019. On March 1, 2020, a District Court judge found that Mr. Cuccinelli's appointment was made in violation of the Federal Vacancies Reform Act. In so finding, this Court held certain directives under Mr. Cuccinelli to be invalid.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United

        States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §2201, as this is a civil action seeking, in addition to other remedies, a declaratory judgment.

15. The Administrative Procedure Act ("A.P.A.") provides a waiver of sovereign immunity as well as a cause of action. 5 U.S.C. § 702.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States, or agencies thereof, acting in their official capacities

## STANDING

17. The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. §702. Defendants' improper denial of Mr. Barrera's I-485 Application has adversely affected Mr. Barrera's ability to obtain legal status in the United States. Mr. Barrera thus falls within APA's standing provisions.

## EXHAUSTION OF REMEDIES

18. Defendants' denial of Plaintiff's I-485 Application constitutes a final agency action under the A.P.A. *See* 5 U.S.C. §§ 551(13); 701(b)(2); 704. Neither the INA nor implementing regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

## FACTUAL ALLEGATIONS

19. Mr. Barrera entered the United States without inspection in or around 1995. In 1997, an immigration judge in Arlington, Virginia granted Mr. Barrera voluntary departure with an alternative order of deportation to El Salvador. Because Mr. Barrera did not leave the U.S. by April 4, 1997, his order of voluntary departure automatically converted into a final order of removal. 8 CFR 1241.1, 8 CFR 1240.50, 8 CFR 1240.53.

20. On October 30, 2018, Mr. Barrera was granted Temporary Protected Status ("TPS") and was paroled into the U.S. pursuant to a grant of advance parole obtained prior to departing the U.S. Mr. Barrera has an approved family-based petition by virtue of his U.S. citizen daughter. On that basis, he sought to adjust status to a legal permanent resident with USCIS. Ex. 1.

21. On December 10, 2019, Defendants implemented a new and unannounced policy in denying Mr. Barrera's adjustment application. Unbeknownst to Plaintiff and the public, Defendants had been concluding that departures on advance parole through TPS do not execute removal orders. Ex. 2.

22. Defendants acknowledged the lack of notice to Mr. Barrera in their Notice of Intent to Deny ("NOID") an I-212 Application for Permission to Reapply for Admission into the United States After Deportation or Removal dated January 14, 2020. Ex. 3. In the NOID Defendants state that "you were under the impression that you had executed the 1997 order upon your departure." *Id.* Defendants then denied that Mr. Barrera has been paroled into the U.S. for purposes of admission, and on that basis, Defendants' denied jurisdiction over the case.

23. Ten days after the denial of Mr. Barrera's I-485 Application, on December 20, 2019 USCIS issued a Policy Update announcing that TPS beneficiaries who travel with advance authorization are no longer executing outstanding removal orders. Ex. 4.

24. In their denial, USCIS concludes that Mr. Barrera has not "departed" the U.S., USCIS denies that Mr. Barrera has executed a removal order and deny his I-485 Application on that basis. Ex. 2.

25. The decision cites MTINA, which provides in relevant part: (1) In the case of a[] [noncitizen] described in paragraph (2) [covering, inter alia, TPS beneficiaries] whom the Attorney General authorizes to travel abroad temporarily and who returns to the United States in accordance with such authorization- (A) the [noncitizen] shall be inspected and admitted in the same immigration status [he or she] had at the time of departure if- (ii) in the case of a[] [noncitizen] described in paragraph [(c)](2)(B) [TPS beneficiaries], [he or she] is found not to be excludable on a ground of exclusion referred to in section 244A(c)(2)(A)(iii) of the Immigration and Nationality Act .... MTINA § 304(c), Pub. L. No. 102-232, 105 Stat. at 1749 (emphasis added). *Id.*

26. The denial states that, per MTINA, a foreign national who originally entered without inspection, received an order of removal, subsequently received TPS and then traveled abroad pursuant to a grant of Advance Parole, will be found to return to the United States in the same immigration status he or she had at the time of departure. USCIS asserts that the "immigration status" that the foreign national returns to is that of someone with an outstanding order of removal. *Id.*

27. In denying his I-485 Application Defendants misconstrue MTINA, refuse to give effect to 8 CFR § 241.7, and refuse to acknowledge that a person departing the U.S. on advance parole is "departing" under *Matter of Arrabally and Yerrabelly*.

28. But for Defendants' unlawful policy, Mr. Barrera's adjustment application would not have been denied on this basis. Instead, had USCIS treated his departure from the U.S. as a departure, and Mr. Barrera would be deemed to have executed his removal order and seeking adjustment of status with USCIS under the plain language of. 8 C.F.R. § 1245.2(a)(1)(ii)(B).

29. Mr. Barrera was and continues to be harmed by this denial. Without permanent resident status, he risks losing TPS and the attendant employment authorization when the TPS designation for El Salvador is terminated and will be at risk of deportation.

30. Deportation would split Mr. Barrera's family apart and force Mr. Barrera to reside in a violent country where he has not lived for close to twenty-five years. For all these reasons, he wishes to have his adjustment application fairly adjudicated in accordance with the law.

## BACKGROUND

*TPS*

31. TPS provides a temporary haven for noncitizens living in the United States when natural disasters or civil strife in their home countries render it unsafe for them to return. Noncitizens granted TPS by Defendant U.S. Citizenship and Immigration Services (USCIS), a component of Defendant, U.S. Department of Homeland Security (DHS), have non-permanent lawful status. While in TPS, beneficiaries are provided with temporary lawful status, protecting them from detention and removal. 8 U.S.C. § 1244(d)(4)TPS holders are eligible for work authorization. While noncitizens' TPS is in effect, they may travel abroad with the prior consent of DHS. 8 U.S.C. § 1254a(a)(1), (d)(4), (f)(3).

32. Upon initial designation of a country for TPS, the Department of Homeland Security ("DHS") issues a notice advising nationals of that country to a period in which they may apply for TPS if they meet certain eligibility requirements, including continuous presence in the United States since the date of the designation, continuous residence in the United States since a date specified in the DHS notice, and being admissible to the United States.

With respect to the admissibility requirement certain groups of inadmissibility are waived by statute and others may be waived at the discretion of DHS. 8 U.S.C. § 1254a(c)(1), (2). Individuals convicted of certain crimes or found to be a security risk are not eligible for TPS. 8 U.S.C. §1254a(c)(2)(B).

33. The application process is a rigorous one. Defendants screen applicants' biometrics, admissibility, and general eligibility for TPS. Only after applicants have been thoroughly screened are they approved for TPS.

34. The Secretary of the DHS is responsible for designating countries for TPS and for periodically assessing whether to renew or to terminate such designations. At the start of 2017, ten countries were designated for TPS. For example, Somalia was designated in 1991, Sudan in 1997, Honduras and Nicaragua in 1999, and El Salvador in 2001, and these designations were continuously renewed until 2017. In 2017, DHS terminated TPS – i.e. determined that there would be no further renewals of the country's TPS designation – for four countries, subject to deferred effective dates. As a result, TPS will permanent expire for El Salvador, Nicaragua, Sudan, and Haiti between November 2018 and September 2019,

35. On October 3, 2018, in *Ramos, et al. v. Nielsen, et al.*, No. 18-cv-01554 (N.C. Cal. Oct. 3, 2018), the U.S. District Court for the Norther District of California enjoined DHS from implementing and enforcing decisions to terminate Temporary Protected Status for Sudan, Nicaragua, Haiti and El Salvador pending further resolution of the case. As a result, Plaintiff is uncertain as to his future status in the United States.

36. Additionally, the TPS statute specifies that "for purposes of adjustment of status under 8 U.S.C. §1245 and change of status under [8 U.S.C. § 1258], the [noncitizen] shall be

9

considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. §1254a(f)(4).

*Adjustment of Status*

37. Adjustment of Status is the mechanism by which an eligible noncitizen who is present in the United States applies for lawful permanent resident status based on a relationship to a U.S. citizen family member or employer. Adjustment of status allows applicants to obtain lawful status while remaining in the United States, instead of requiring them to first return home to their home countries and apply for in immigrant visa from a U.S. embassy or consulate abroad, which is often a lengthy application process.

38. The regulations governing jurisdiction over adjustment applications state that an immigration judge has jurisdiction over all such applications, with a general exception only for "arriving aliens," over whose adjustment applications USCIS has jurisdiction. 8 CFR § 1245.2(a)(1); *see also*, 8 CFR § 245.2(a)(1). A person paroled into the U.S. is generally an "arriving alien," as this classification of individuals is defined, inter alia, as those who seek admission at a port of entry. *See* 8 CFR §§n1.2, 1001.1(q); *see also*, *In re Oseiwusu*, 22 I. & N. Dec. 19 (BIA 1998) (holding that a noncitizen who enters the U.S. under a grant of advance parole is an "arriving alien.").

*Advance Parole and Adjustment of Status*

39. A foreign national who is paroled into the United States with an Advance Parole Travel Document satisfies the threshold eligibility requirement of adjustment under INA § 245(a), which provides: The status of a[] [noncitizen] who was inspected and admitted or

paroled into the United States … may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of a[] [noncitizen] lawfully admitted for permanent residence if (1) [he or she] makes an application for such adjustment, (2) [he or she] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him [or her] at the time his [or her] application is filed.

40. A person paroled into the United States is generally an "arriving alien," as this classification of individuals is defined, inter alia, as those who seek admission at a port of entry. See 8 C.F.R. §§ 1.2, 1001.1(q).

41. TPS holders must apply for advance permission to depart the United States on a form that explicitly states that its purpose is to obtain advance parole in order to be "paroled" into the United States upon their return. Similarly, for those with paper versions of Form I-94, the Arrival-Departure Record, CBP often stamps the word parole with a citation to INA § 212(d)(5) (the parole statute), upon the individual's return. Finally, the class of admission to which these individuals are assigned is "parole." *See Brito v. Mukasey*, 521 F.3d 160, 164 n.5 (2d Cir. 2008) (noting that the exemption from the "arriving alien" designation in 8 C.F.R. § 1.1(q) for advance parole entrants is limited to the expedited removal context); *In re Oseiwusu*, 22 I&N Dec. 19 (BIA 1998) (holding that a noncitizen who enters the United States under a grant of advance parole is an "arriving alien").

42. In *Matter of Arrabally and Yerrabelly*, the BIA made plain that the term "advance parole" is simply parole that has been requested and authorized in advance based on an expectation that an alien will be presenting himself for inspection without a valid visa in

the future. 25 I. & N. 771, 777 (BIA 2012). The purpose of advance parole is to allow those seeking status to prevent abandonment of their applications for status. *Id*. at 772.

43. The Code of Federal Regulations dictate under their regulation on self-removal that "*any alien who has departed from the U.S. while an order of removal is outstanding* shall be considered to have been deported, excluded and deported, or removed. . ." 8 CFR § 241.7. USCIS ignores this regulation in declaring that Mr. Barrera has not executed his removal order in departing the U.S. Defendants then precipitously announce this violation as policy.

44. In support of their denial, USCIS relies on an erroneous interpretation of MTINA, which states that the TPS holder shall be inspected and admitted in the same immigration status he or she had at the time of departure. USCIS ignores the key phrase "at the time of departure" by suggesting that the status to which a TPS holder returns is an unlawful one due to his removal order. The only status Mr. Barrera held at the time of his departure—that is, when he left the United States with the Advance Parole approval—is TPS. TPS is a lawful, though temporary, status. *See, e.g., Matter of Sosa Ventura*, 25 I&N Dec. 391, 395 (BIA 2010) (finding that TPS renders a noncitizen's presence "lawful").

45. An outstanding order of deportation is not a "status." As one court has explained, there are no recognized types of unlawful status—a person is either in lawful status (of which there are multiple types) or unlawful status (of which there are no subsidiary types). *Gomez v. Lynch*, 831 F.3d 652, 658 (5th Cir. 2016) ("[T]here are no fine-grained distinctions between and among various forms of unlawful status, so there is no status of 'present without admission' to which Gomez could return."); *see also id*. at 659 n.11

(explaining that grounds of inadmissibility—such as present without admission—are not the same as an immigration status).

## CAUSES OF ACTION

## COUNT ONE

**(Violation of the Immigration and Nationality Act and the Administrative Procedure Act)**

46. Mr. Barrera repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

47. Plaintiff has been aggrieved by agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et. Seq.

48. In violation of long-standing precedent and the CFR, USCIS failed to admit and take jurisdiction over Mr. Barrera's I-485 Application as an arriving alien under a grant of advance parole.

49. Defendants denied Mr. Barrera's execution of his removal order through violations of the CFR and case precedent.

50. Defendants have erroneously interpreted MTINA to mean that Plaintiff has not departed the U.S. based on interpreting an order of removal as a "status."

51. Defendants failed to administer the provisions of the INA in conformance with Congressional intent.

52. Defendants acted arbitrarily, capriciously, and contrary to law in violation of the Administrative Procedure Act by denying Mr. Barrera's I-485 Application to Register Permanent Residence or Adjust Status.

53. Mr. Barrera has exhausted all administrative remedies available to him as of right.

54. Mr. Barrera has no other recourse to judicial review other than this action.

## COUNT TWO

**(Violation of Notice and Comment Rulemaking 5 U.S.C. 553)**

55. Mr. Barrera repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

56. The Administrative Procedure Act, 5 U.S.C. § 553 requires that agencies provide public notice of, and opportunities to comment on, legislative rules before their promulgation. *See* 5 U.S.C. 553(b), (c). The APA also requires that any substantive rule must be published at least 30 days prior to its effective date. *See* 5 U.S.C. §553(d).

57. Although styled as a "Policy Update," the December 20, 2019 rule is a legislative rule within the meaning of the APA.

58. Defendants did not comply with the APA's procedural requirements when it made the December 20, 2019 Policy Update immediately effective.

59. Defendants' failure to provide for notice and comment violates 5 U.S.C. 553(b) and (c).

60. Defendants' failure to publish the December 20, 2019 rule thirty days before its effective date violates 5 U.S.C. § 553(d).

## COUNT THREE

### (Petition for Mandamus, 28 U.S.C. §1361)

61. Mr. Barrera repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

62. Mandamus is available to compel a federal official or agency to perform a duty if: (1) there is a clear right to the relief requested; (2) defendant has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. 1361.

63. Defendants have a duty to find that Mr. Barrera, a TPS holder, has self-removed in execution of a removal order under 8 CFR §241.7.

64. Plaintiff has a statutory right to have Defendants treat him as eligible for adjustment of status under INA § 245(a) by virtue of having executed a removal order and returning as an "arriving alien" under 8 CFR 1245.2(a)(1)(ii)(B).

65. USCIS' new policy deprives Plaintiff of a lawful adjudication of his adjustment of status application in violation of the INA and APA.

66. USCIS' policy harms Plaintiff.

67. There are no other adequate available remedies.

WHEREFORE, Plaintiff prays that this Court:

A. Declare Defendants' denial of Nolberto Barrera's I-485 Application to Register Permanent Residence or Adjust Status under section 245 of the Immigration and Nationality Act to be in violation of the Administrative Procedure Act;

B. Declare Defendants' denial of Nolberto Barrera's I-485 Application to Register Permanent Residence or Adjust Status under section 245 of the Immigration and Nationality Act to be in violation of Notice and Comment Rulemaking pursuant to 5 U.S.C. 553.

C. Declare the requirement that a departure under TPS qualifies as a departure for purposes of voluntary departure;

D. Declare the December 20, 2019 Policy Update issued by the previous Acting Director Kenneth T Cuccinelli to be invalid because Mr. Cuccinelli's appointment was made in violation of the Federal Vacancies Reform Act in *L.M.-M. v. Cuccinelli*, 2020 U.S. Dist. LEXIS 35897, __ F. Supp. 3d __, 2020 WL 985376;

E. Order Defendant USCIS to immediately reopen and adjudicate Nolberto Barrera's I-485 Application to Register Permanent Residence or Adjust Status under section 245 of the Immigration and Nationality Act;

F. Grant attorneys' fees and costs pursuant to 28 U.S.C. § 2412, 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d) and other authority; and

G. Grant any other relief the Court deems appropriate and just.

Dated: 8.14.20                                      Respectfully submitted

/s/Ilana Kramer_____
Ilana R. Kramer
Ivan Yacub
YACUB LAW OFFICE
12761 Darby Brook Ct, Suite 102
ikramer@yacublaw.com
*Counsels for Plaintiff*

## Index of Exhibits

| Number | Description |
| --- | --- |
| 1 | I-130 Approval Notice and I-821 Approval Notice |
| 2 | I-485, Denial Notice |
| 3 | I-212 NOID |
| 4 | USCIS Policy dated December 20, 2019 |