## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NOLBERTO BARRERA**, | |
| Plaintiff, | |
| v. | Case No. 20-cv-02395 (CRC) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Nolberto Barrera entered the United States without inspection in 1995, was issued a final order of removal in 1997, and was granted Temporary Protected Status ("TPS") in 2002. Sixteen years later, in 2018, he traveled abroad under a grant of "advance parole"—prior authorization to travel abroad and return to the country—and reentered the U.S. in October 2018. Thinking that his travels executed the 1997 removal order, Mr. Barrera applied for adjustment of status with the U.S. Citizenship and Immigration Services ("USCIS") in December 2018. USCIS denied his application, and this suit followed.

This case is materially identical to *Galindo Gomez v. U.S. Citizenship & Immigration Services*, No. 19-3456 (ABJ), 2020 WL 7419674 (D.D.C. Nov. 13, 2020), <u>appeal docketed</u>, No. 21-5171 (D.C. Cir. Aug. 4, 2021), in which Judge Amy Berman Jackson dismissed for lack of jurisdiction a case involving a similar adjustment-of-status denial. Finding its analysis persuasive here, the Court will grant the government's motion to dismiss and deny Barrera's motion for summary judgment.

## I.   Background

Mr. Barrera is a resident of Virginia who first entered the United States without inspection in 1995.  Am. Compl. at 1; id. ¶ 19.  In February 1997, an immigration judge granted him permission to depart the U.S. voluntarily within two months.  Id. ¶ 19; Pl. Ex. 2 (USCIS Decision at 1), ECF No. 1-4.  Because Barrera failed to do so, his departure order automatically converted to a final removal order.  Am. Compl. ¶ 19.

In 2002, Barrera was granted TPS as an immigrant from El Salvador.  See Defs. Ex. 2 (Approved TPS Application), ECF No. 12-3.  Sometime in 2018, he received permission to depart the country and to reenter without a visa—a process known as "advance parole."  Am. Compl. ¶ 20; Pl. Ex. 1 (Notice of Action), ECF No. 1-3.  He left the U.S. and reentered in October 2018 "pursuant to an advance parole issued because of [his] TPS status."  USCIS Decision at 1; Am. Compl. ¶ 20.  In December 2018, he filed an I-485 Application to Register Permanent Residence or Adjust Status, seeking to adjust his immigration status to that of lawful permanent resident.  Am. Compl. ¶ 20; USCIS Decision at 1.  Barrera believed that his 1997 removal order should not prevent him from obtaining a status adjustment from USCIS because, based on his understanding of the law, his travel abroad in 2018 "executed" his removal order. See Am. Compl. ¶¶ 22, 28; id. ¶ 43 (citing 8 C.F.R. § 241.7).

On December 10, 2019, the USCIS office in Fairfax, Virginia, denied Barrera's application to adjust status, finding that he "failed to comply with a final order of removal." USCIS Decision at 1.  In a letter, USCIS explained that the agency "ha[d] determined, based on the language of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 [("MTINA")], that a TPS recipient paroled into the United States pursuant to an advance parole returns to the United States in the same immigration status they had before departure and

do[es] not execute an outstanding removal order." Id.  Thus, in USCIS's view of the law, Barrera remained subject to the removal order.  The letter also stated that "[a]n individual subject to an outstanding order of removal . . . generally remains under the jurisdiction of the immigration judge until such order is executed." Id. (citing 8 C.F.R. § 245.1(c)(8)(ii)(A)).  Ten days after USCIS denied Barrera's application, the agency's Office of the Director, in Washington, D.C., issued a "Policy Alert" to "clarif[y]" that TPS beneficiaries who travel abroad and return to the U.S. on advance parole do not execute any outstanding removal orders.  Pl. Ex. 4 (Policy Alert at 1), ECF No. 1-6.

In August 2020, Barrera filed this lawsuit against USCIS, the Department of Homeland Security, and their respective agency heads.  He claims that USCIS's denial of his I-485 application was based on an erroneous interpretation of the MTINA and thus was arbitrary and capricious under the Administrative Procedure Act ("APA").  See Am. Compl. ¶¶ 50–52. Barrera also maintains that the December 2019 Policy Alert is a legislative rule that USCIS illegally promulgated without following the APA's notice-and-comment procedures.  Id. ¶¶ 56–60; see 5 U.S.C. § 553.  Lastly, he brings a mandamus claim, contending that USCIS has "a duty to find" that he executed his removal order, and thus he has a right to be treated "as eligible for adjustment of status."  Am. Compl. ¶¶ 63–64.  He seeks various forms of declaratory relief and an order requiring "USCIS to immediately reopen and adjudicate" his application to adjust status.  Am. Compl. at 16.

The government filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under 12(b)(6). Barrera's response is styled as an opposition to the motion to dismiss "or" an "alternative" motion for summary judgment.  See Opp'n at 1–2.

## II.   Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court "must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  But a court need not accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  When reviewing a challenge under Rule 12(b)(1), "the court may consider documents outside the pleadings to assure itself that it has jurisdiction," Sandoval v. U.S. Dep't of Justice, 322 F. Supp. 3d 101, 104 (D.D.C. 2018) (Cooper, J.), and the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Under Rule 12(b)(6), "a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint[,] and matters about which the Court may take judicial notice.'"  Sandoval, 322 F. Supp. 3d at 104 (citation omitted).

Because the Court will grant the government's motion to dismiss, it need not recite the summary judgment standard.

## III.   Analysis

This case is on all fours with Galindo Gomez, 2020 WL 7419674.  A brief recap of that case's facts:  the plaintiff entered the U.S. without inspection and had been subject to a deportation order since 1994; in 2001, he was granted TPS.  Id. at *1.  In 2016, the plaintiff, like Mr. Barrera here, left the country on advance parole and then returned.  Id.  He applied for adjustment of status in June 2018, and USCIS denied the application in July 2019.  Id. at *2. After the plaintiff filed suit in November 2019, USCIS issued the December 2019 Policy Alert,

4

and the plaintiff amended his complaint to challenge the policy on the same grounds that Barrera does here.  Id.

Judge Amy Berman Jackson held that the court lacked subject matter jurisdiction because the plaintiff had not exhausted his administrative remedies and failed to press his claim in the appropriate forum.  See id. at *4–6.  That was so, in her view, because USCIS lacked jurisdiction over the application for adjustment of status in the first place; rather, the application should have gone through an immigration judge, then to the Board of Immigration Appeals, and ultimately to a federal circuit court of appeals—not a district court.  See id.  On the challenge to the December 2019 Policy Alert, Judge Berman Jackson held that the plaintiff lacked standing.  Since USCIS denied the application *before* issuing the policy, she reasoned, the plaintiff could not show causation or redressability.  See id. at *6.  Following Galindo Gomez, and many other similar cases, this Court will reach the same outcome here.

A. Counts One and Three

Barrera's substantive APA and mandamus claims (counts one and three) turn mainly on whether he was an "arriving alien" when he returned from travel outside the U.S. pursuant to advance parole.  An "arriving alien" is defined as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry. . . . An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.  However, an arriving alien . . . who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien.

8 C.F.R. § 1.2.

The distinction between arriving and non-arriving aliens is crucial here because, "[i]f an 'arriving alien' is subject to deportation or removal proceedings, USCIS has exclusive

jurisdiction over his adjustment application." Galindo Gomez, 2020 WL 7419674, at *3 (citing 8 U.S.C. § 1255(a); 8 C.F.R. § 1245.2(a)(1)). For non-arriving aliens, however, an immigration judge in the Executive Office for Immigration Review "has exclusive jurisdiction" over any application for adjustment of status. 8 C.F.R. § 1245.2(a)(1)(i). The government maintains that Barrera falls into the latter category. If that is correct, he should have submitted his adjustment application to an immigration judge, appealed to the Board of Immigration Appeals, and then "to the relevant circuit court of appeals." See Jafarzadeh v. Duke, 270 F. Supp. 3d 296, 305–306 (D.D.C. 2017). The upshot is that a district court would "lack[] the power to review plaintiff's status or grant the relief he seeks." Galindo Gomez, 2020 WL 7419674, at *4.

The Court agrees that Barrera does not meet the definition of "arriving alien." The MTINA provides that "a TPS beneficiary," like Barrera, "who travels under advance parole . . . returns to the United States with the same immigration status that was in effect when he left." Id. (citing Pub. L. 102-232 § 304(c), 105 Stat. 1733, 1749 (TPS beneficiaries "shall be inspected and admitted in the same immigration status [they] had at the time of departure.")). He thus "remains subject to the deportation order issued in" 1997, "notwithstanding the fact that he has remained in the United States as a TPS beneficiary." See Galindo Gomez, 2020 WL 7419674, at *4; Am. Compl. ¶ 19. Although Barrera contends that whether he is an "arriving alien" is irrelevant, that inquiry "determines whether USCIS could take up his request and whether its denial could then be challenged in district court." Galindo Gomez, 2020 WL 7419674, at *5.

Because Barrera is not an arriving alien, USCIS cannot "adjudicate [his] I-485 Application to Register Permanent Residence or Adjust Status," as he asks this Court to so order. See Am. Compl. at 16. Rather, an immigration judge "has exclusive jurisdiction to adjudicate any application for adjustment of status [he] may file." 8 C.F.R. § 1245.2(a)(1)(i). As Galindo

Gomez noted, however, someone in Barrera's position still has remedies.  He could move "to reopen his removal proceedings, [which] would allow him to seek adjustment of his immigration status."  2020 WL 7419674, at *5.  Taking that route, federal court review would take place in the court of appeals, not district court.  In short, this Court lacks jurisdiction.

Barrera resists this conclusion by arguing that his departure from the U.S. executed his removal order.  Generally, an individual "ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed."  8 U.S.C. § 1101(g).  Executing a removal, in turn, triggers consequences—namely, an individual is inadmissible for ten years from the date of his departure.  See 8 U.S.C. § 1182(a)(9)(A)(ii)(II) (inadmissible aliens include anyone who "departed the United States while an order of removal was outstanding").  But this is not so in the specific context of TPS.

TPS beneficiaries *cannot be removed* "during the period in which [temporary protected] status is in effect."  8 U.S.C. § 1254a(a)(1)(A).  And an individual with TPS "may travel abroad with the prior consent" of the Secretary of Homeland Security.  Id. § 1254a(f)(3).[1]  If TPS were revoked, however, Barrera's original entry without inspection would "control[] his status," and he would be inadmissible and his removal could be executed.  See Gonzalez v. Mayorkas, No. 1:13-cv-1230, 2014 WL 585863, at *5 (E.D. Va. Feb. 12, 2014).  In effect, TPS provides a "temporary stay of his removal."  Id.  Meanwhile, Barrera's "grant of advance parole did not erase the fact that he had entered without inspection" in 1995.  Id. ("The category of aliens who entered without inspection and the category of arriving aliens are mutually exclusive").  As

---

[1] While the statute refers to the "Attorney General," this function has been transferred to the Secretary of Homeland Security.  See 6 U.S.C. §§ 251, 557.

MTINA states:  TPS beneficiaries "shall be inspected and admitted in the same immigration status [they] had at the time of departure."  Pub. L. 102-232 § 304(c), 105 Stat. 1733, 1749.

Accordingly, in 2018, Barrera departed the U.S. as an individual who had entered the country without inspection and was subject to an order of removal, but who had TPS.  And he returned as such.  His trip abroad neither executed his removal order nor changed the fact that he entered without inspection in 1995.  He therefore could not have been an arriving alien upon his return.  Other courts have reached the same conclusion when assessing the effect (or lack thereof) of TPS beneficiaries' travel abroad.  See, e.g., Jean v. Pekoske, No. 2:20-233, 2021 WL 683327, at *2 (M.D. Fla. Feb. 22, 2021) ("When [plaintiff] left for his trips abroad, he was in TPS status but subject to a final removal order," and his "status remained unchanged by his travels." (quoting Jacques v. Wolf, No: 8:20-cv-01296-02, 2020 WL 5500208, at *4 (M.D. Fla. Sept. 11, 2020)); Pineda v. Wolf, No. 19-11201, 2020 WL 4559936, at *1 (D. Mass. May 13, 2020) ("Pineda departed from the United States as a person unlawfully present," though he had TPS, "and he returned as such."); Santa Maria v. McAleenan, No. 18-3996, 2019 WL 2120725, at *3 (S.D. Tex. May 15, 2019) (rejecting argument that TPS beneficiary's travel abroad "executed [a] removal order"); Gonzalez, 2014 WL 585863, at *5–6.

The Court will therefore dismiss Barrera's claim that USCIS's denial of his request to adjust status was arbitrary and capricious under the APA.

The Court will also dismiss Barrera's mandamus claim for the same reasons.  A district court can grant mandamus relief only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  See Jafarzadeh, 270 F. Supp. 3d at 311 (quoting In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005)).  Given that USCIS lacks jurisdiction over Barrera's

application and that he has other administrative remedies at his disposal, Barrera cannot meet at least the last two requirements.

      B.  <u>Count Two</u>

      Next, the Court concludes that Barrera does not have standing to challenge the December 2019 Policy Alert.  Article III standing has three elements: (1) a "plaintiff must have suffered an 'injury in fact'" that is (2) fairly traceable "to the challenged action," and (3) "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'"  <u>See</u> <u>Lujan</u>, 504 U.S. at 560 (citations omitted).  Again, as in <u>Galindo Gomez</u>, USCIS's denial of Barrera's application came *before* the agency issued its Policy Alert.  <u>See</u> 2020 WL 7419674, at *6 (holding that plaintiff did not show standing for lack of causation and redressability where denial came five months before the Policy Alert).

      Barrera counters that his denial occurred just ten days prior to the Policy Alert, Opp'n at 17, suggesting that the causal link between the policy and his denial is stronger than in <u>Galindo Gomez</u>.  But even assuming some causal link, the above analysis of the other claims shows that the TPS provisions of MTINA govern his travel abroad and demonstrate why that travel did not execute his removal order.  USCIS did not need the Policy Alert to reach its decision; indeed, the agency cited MTINA in its denial.  Other cases also illustrate that USCIS adjudicated adjustment applications in accordance with MTINA in this way well before the December 2019 Policy Alert.  <u>See, e.g.</u>, <u>Pineda</u>, 2020 WL 4559936, at *1–2; <u>Del Carmen Espinosa v. Swacina</u>, No. 19-21315, 2019 WL 6682836, at *1–2 (S.D. Fla. Dec. 6, 2019); <u>Santa Maria</u>, 2019 WL 2120725, at *1–2.  Thus, whether the denial is traceable to the Policy Alert seems doubtful, and in all events, this Court could not redress Barrera's injury by declaring it invalid.

In sum, Barrera has failed to establish the causation or redressability element of standing, and the Court will dismiss this claim for lack of subject matter jurisdiction.

## IV.   Conclusion

For these reasons, the Court will grant the government's motion to dismiss for lack of subject matter jurisdiction and deny Barrera's motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.

 

 

 

 

CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>January 11, 2022</u>